IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 15, 2004

## STEPHEN OTIS NICELY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 70791      Richard Baumgartner, Judge**

———————————

**No. E2003-02113-CCA-R3-PC - Filed July 15, 2004**

———————————

The petitioner, Stephen Otis Nicely[1], appeals the Knox County Criminal Court's denial of his petition for post-conviction relief from his rape of a child conviction, his aggravated sexual battery conviction, and his resulting effective sentence of twenty-two years. The petitioner claims that he received the ineffective assistance of counsel because his attorney (1) refused to let him testify at trial; (2) failed to challenge the admissibility of evidence of the victim's post-traumatic stress disorder; (3) failed to prepare and investigate adequately for trial; and (4) failed to instruct the petitioner on the range of punishment if convicted. We affirm the trial court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Kristi M. Davis, Knoxville, Tennessee (on appeal); Gerald L. Gulley, Jr., Knoxville, Tennessee (at post-conviction hearing), for the appellant, Stephen Otis Nicely.

Paul G. Summers, Attorney General and Reporter; Michelle Chapman McIntire, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leland L. Price, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the conduct of the petitioner toward his girlfriend's daughter, N.B. This court affirmed his convictions on direct appeal and provided the following factual account of the offenses:

_____

[1]The petitioner's name is spelled interchangeably as "Stephen" and "Steven" throughout the record. The petitioner's signature also uses both spellings in various documents in the record. The style of his post-conviction petition has "Stephen," but the typed name and written signature for the oath are "Steven." We use the spelling in the style of the petition.

In the summer of 1994, N.B., the victim, the victim's mother, Wilma Faye Wynn, and the appellant lived in the Karns community of Knox County. Ms. Wynn and the appellant began their relationship around 1992. In 1994, they began living together. N.B. was eleven years old and entering the sixth grade at that time. Although the thirty-seven year old appellant and the victim's mother were unmarried, N.B. viewed the appellant as a "father figure." In September of 1995, the victim confided in a friend that she and the appellant had been involved in sexual activity. In January of 1996, the appellant was charged in a two count indictment with rape of a child and aggravated sexual battery.

At trial, she testified, providing no specific dates, that the "touchin' happened all the time" in his room, the living room, and the kitchen. She testified that the appellant had touched her vagina with his penis and his mouth. The victim admitted that she would go into the appellant's room because she liked the attention. She stated that during the incidents of abuse, she remained clothed but the appellant was unclothed.

The victim recounted that the first sexual encounter occurred when she and the appellant were watching television in his bedroom. The appellant began rubbing her back and eventually removed her bra and began rubbing her stomach and chest. Frightened, the victim left the room. The appellant followed her outside and told her that if she told they would both be "in trouble."

Another incident occurred in the living room, when the appellant digitally penetrated her vagina. She testified that on another occasion he put her hand on his penis and she masturbated him until he ejaculated. Yet, another offense occurred in the victim's brother's room. The appellant put his hands on her and asked if she had had sex standing up before. This offense ceased when the victim's mother returned home from work.

The victim testified that on or about September 3, 1995, the appellant got out of the shower and had a towel wrapped around him. The victim had entered his room to retrieve a towel for herself. The appellant pulled her onto the bed where they both began touching each other. The appellant then penetrated the victim's vagina with his penis. When she complained that it hurt, he stopped. She stated that she liked the appellant to fondle her; however, the penetration scared and hurt her.

Later that same day, the appellant took the victim and her brother to the lake. The appellant dropped her brother off at the bank with other children while he and the victim went riding in the boat. The appellant gave the victim a Valium for a headache. After entering a cove on the lake, the appellant gave the victim a beer. That evening, when the appellant and her mother were away at a concert, the victim drank some liquor, locked herself in the bathroom, and passed out. Her brother called Debbie, their father's girlfriend, who took the victim to her trailer in Powell. It was on this occasion that the victim related to Debbie her sexual encounters with the appellant. Debbie called the victim's mother and advised what the victim had told her.

State v. Steven Otis Nicely, No. 03C01-9805-CR-00174, Knox County, slip op. at 2-4 (Tenn. Crim. App. Oct. 18, 1999).

At the post-conviction evidentiary hearing, the petitioner testified that he was prejudiced because his trial attorney failed to file a pretrial motion for an instruction on his sentencing range. He also stated that his attorney was ineffective for failing to challenge the state's admission of evidence of his prior bad acts. He said that his trial attorney told him that he could receive fifteen to sixty years in prison if convicted but that he did not recall whether the attorney told him this before or after his trial started. He said that if he had been told about the sentencing range before trial, he probably would have taken the prosecution's fourteen-year offer.

The petitioner testified that his attorney should have established at trial that the victim was sexually active with a fourteen-year-old boy when she was nine. He said that the victim was pregnant at the time she accused him of rape and that she made the accusation to protect the father of the baby. He said his attorney should have introduced evidence of the pregnancy at trial. He said his attorney should have impeached the victim by showing that she had previously claimed to be able to perform various sexual acts when, in fact, she did not know how to perform these acts. He said that although the victim testified at trial that she hurt and bled when the petitioner penetrated her, the victim's mother could have testified that she heard the victim previously say she did not hurt or bleed.

The petitioner testified that he told his attorney that his brother and his brother's wife were lying when they testified at his trial but that his attorney never attempted to show that they were being untruthful. He stated that he had testified against his brother in an unrelated matter and that his attorney should have asked his brother whether he was testifying at the petitioner's trial for revenge. He said his attorney should not have called Dr. Jeffrey Davis to the stand, who testified regarding the victim's post-traumatic stress disorder. He said that after the victim lied while testifying, he told his attorney that he wanted to testify on his own behalf. He said his attorney warned him that his drug history would be admissible if he testified, which made sense at the time. He said, however, that he had quit using drugs, with the exception of Valium, and that he could have explained this while testifying. He said his sisters and brother-in-law also advised him not to testify.

He said that a juror was good friends with the victim's father and that he told his attorney to ask for a mistrial based on the juror's relationship. His said his attorney should have tried to suppress Nancy Jackson's testimony regarding incriminating statements he made to her because his fifth amendment rights were violated. He said he did not tell Ms. Jackson that he believed he was a child molester and that he allowed the victim to masturbate him. He said his attorney erred in closing arguments by calling the victim a "pathetic little girl." He said his attorney should have challenged the bill of particulars, which did not specify what specific crimes against which he needed to defend.

On cross-examination, the petitioner testified that his attorney did not discuss trial strategy with him. He said that if he had testified, he would have told the jury that the victim was lying and that the victim grabbed him inappropriately. He said he remembered discussing the prosecution's fourteen-year plea offer, but he denied that his attorney discussed possible sentencing ranges with him at that time. He said that he told his attorney that he would take a twelve-year offer but that he only said this to buy time in order to fire his attorney.

The petitioner's trial attorney testified that he advised the petitioner to accept the state's plea offer and explained the possible sentences the petitioner faced if he was convicted. He said he told the petitioner that he should accept the state's offer because of his incriminating statement to a nurse, in which he asked her if he was a pervert because he allowed a little girl to masturbate him. He said that from the beginning, he told the petitioner that his sentence would range from fifteen to twenty-five years as a Range I offender. He said the defendant insisted on using the defense that the victim provoked him. He said that he told the petitioner that because the victim was twelve, her provocation was not a defense and that this was part of the reason that he advised the petitioner not to testify. He said that his strategy at trial was to show that the victim was confused, that she had hallucinations, and that she had made up her story because of drug abuse.

In response to the petitioner's claim that he did not adequately prepare for trial, the attorney testified that he met with the petitioner several times, explained the defense he was going to use, and told the petitioner about the problems with his case. He said that in his closing argument to the jury, he mentioned the sentence the petitioner was facing and the time he would be required to serve if convicted. He said he did not try to suppress the petitioner's statement to the nurse because he could not find a legal basis for its suppression. He said that he tried to talk to the victim before the trial but that he did not, noting that most victims are reluctant to talk with a defense attorney. He said that he met with each defense witness twice and that he did not use certain witnesses because their testimony would not have been helpful. He said he was prepared for trial and had explored all possible defenses.

The trial attorney said that when the victim testified, he was able to elicit the responses he wanted from her regarding the victim's sexual history and provoking the petitioner. He said that Dr. Jeffrey Davis' testimony was helpful to overcome the petitioner's admission to Ms. Jackson and that he was able to get the doctor to testify about the victim's problems. He acknowledged that some questions asked by the prosecution on cross-examination hurt the petitioner. He said, however, that calling Dr. Davis to testify was the best strategy for the petitioner at the time of his trial and that he

did not believe the victim's post-traumatic stress disorder played a significant role in the case. He said he did not want the petitioner to testify because of his drug history, his demeanor, and because when preparing him for cross-examination, the petitioner always used the victim's provocation as justification for the offenses. He said he told the petitioner that he had an absolute right to testify and would call him to the stand if that was his decision. He said the main problem with the petitioner testifying was that he did not deny the allegations. He said that he always gives clients a jury list and that if the client tells him that they are uncomfortable with a juror, he would have the juror removed from the case. He said he described the victim as a "pathetic little girl" because that is how he believed the jury felt about her at the time.

On cross-examination, the petitioner's trial attorney acknowledged that the petitioner never used the word "provocative" to describe the victim's behavior. He said the petitioner instead stated that the victim "came on" to him. He said that the defendant wanted to use as a defense that he prematurely ejaculated when the victim grabbed him but that he believed a jury would find this defense incredible. He said the only positive aspect of the defendant's case was that he believed a jury may not have sympathy for the victim because of her drug use and hallucinations. He said he did not recall anything about the victim being pregnant. He acknowledged that the petitioner's drug related convictions were not recent at the time of his trial. He said the petitioner's demeanor and his testimony would have created the largest problem if the petitioner testified, not his drug use. He said that although he did not recall the prosecution asking the victim about inappropriate touching before the charged offenses, if they did, he should have objected. The petitioner, recalled by his post-conviction attorney, testified that he did not tell anyone that he ejaculated; rather, he told "them" that he had a urinary tract infection which could have caused a discharge during one of the incidents with the victim. He said his trial attorney told him that documentation of his infection would not be helpful.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629

S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

In a post-conviction case, the burden is on the petitioner to prove by clear and convincing evidence his grounds for relief. T.C.A. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

With regard to the petitioner's claim that his attorney refused to let him testify, the post-conviction court accredited the trial attorney, who testified that he told the petitioner that he had an absolute right to testify and that he would put the petitioner on the stand if that was what he decided. He said, however, that he advised the petitioner not to testify because he would still be guilty using his victim provocation justification for the offenses. He said the petitioner's demeanor and his drug history would have also damaged his case if the petitioner had decided to testify. Moreover, during the petitioner's testimony at the post-conviction hearing, he never claimed that his attorney refused to let him testify. He testified that his attorney said that he should not testify because of his prior drug convictions, which made sense to the petitioner at the time. The evidence shows that the petitioner's trial attorney did not refuse to allow the petitioner to testify.

As to the petitioner's claim that his attorney should have challenged the admissibility of the testimony of Dr. Jeffrey Davis regarding the victim's post-traumatic stress disorder, we conclude the petitioner is not entitled to relief. In State v. Ballard, 855 S.W.2d 557 (Tenn. 1993), our supreme court held that admission of expert testimony concerning symptoms of post-traumatic stress syndrome has a "strong potential to prejudice a defendant's cause" and that its admission was reversible error. Thus, in the present case, the petitioner's trial attorney should have objected to the testimony of Dr. Davis concerning post-traumatic stress disorder. Given the substantial evidence presented at trial, however, including the petitioner's admission to a nurse that he allowed the victim to masturbate him, we believe that even if the attorney had objected and the jury had not heard testimony about the victim's post-traumatic stress disorder, the petitioner would still have been found guilty. The petitioner has not shown that trial counsel's failure to object to the testimony of Dr. Davis at trial prejudiced him to the extent of a reasonable probability that it affected the jury's verdict.

With regard to the petitioner's claim that his attorney failed to investigate and prepare adequately for trial, his trial attorney testified that he explained the possible sentences the petitioner might receive if he were to be convicted and advised the petitioner to plead guilty. He stated that once the petitioner decided to go to trial, his strategy was to show that the victim was confused and lied because she was abusing drugs. He said that he met with the petitioner several times and that

he explained possible defenses and problems with the case. He said he interviewed each defense witness twice, explored all possible defenses and was prepared for trial. We conclude that the petitioner has failed to show that his attorney was deficient by failing to prepare and investigate the case.

Finally, with regard to the petitioner's claim that his trial attorney was ineffective by failing to instruct the petitioner on his range of punishment if convicted, the attorney testified that he explained the possible sentences the petitioner may receive if he was convicted. He said he told the petitioner that his sentence would be fifteen to twenty-five years as a Range I offender. We hold that the petitioner has failed to show that he received the ineffective assistance of counsel.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE